IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHASE LUSHER, | : |
| *Plaintiff*, | : Civil Action No.: |
| v. | : |
| BANK OF AMERICA, N.A., | : |
| *Defendant*. | : |

**COMPLAINT IN CIVIL ACTION**

AND NOW, comes Plaintiff, Chase Lusher, by and through the undersigned counsel, J.P. Ward & Associates, LLC, specifically, Justin M. Bahorich, Esq. and file the within Complaint in Civil Action against Defendant Bank of America, N.A. of which the following is a statement:

**PARTIES**

1. Plaintiff, Chase Lusher (hereinafter "Mr. Lusher"), is an adult individual who currently resides at 226 North Arch Street, Apartment 1, Lancaster, PA 17603.

2. Defendant, Bank of America, N.A. is a corporation with its principal place of business located at 100 North Tryon Street, Charlotte, NC 28255.

**JURISDICTION AND VENUE**

3. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 as Plaintiff brings this lawsuit under the Fair Credit Reporting Act ("FCRA"), *inter alia*.

4. A substantial part of the events or omissions giving rise to the claims occurred in Eastern Pennsylvania, and therefore, this action is within the jurisdiction of the United States

1

District Court for the Eastern District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

5. Mr. Lusher maintained a credit account with Bank of America.[1]

6. Mr. Lusher provided his credit card information to a Michigan-based attorney, Matt Tavi, for legal services that were never rendered. No representation agreement or contract was ever signed. Matt Tavi placed unauthorized charges of $5,000 on Mr. Lusher's Bank of America credit card.

7. Mr. Lusher filed a fraud report with Bank of America upon learning of the unauthorized charges on his account.

8. Bank of America initially removed the $5,000 charge from Mr. Lusher's account.

9. Bank of America then sent Mr. Lusher a letter stating that they were re-posting the $5,000 charge on Mr. Lusher's account.

10. Mr. Lusher again filed a dispute regarding the unauthorized charge, asking for information and evidence of Bank of America's efforts to investigate the disputed charge.

11. Mr. Lusher's letter provided written notice to Bank of America of a billing error.

12. In response, Bank of America sent Mr. Lusher a letter asking for more information regarding his fraudulent charge claim, and stating that he had ten (10) days to provide the requested information.

13. Two (2) days after Bank of America's request for information, Bank of America sent Mr. Lusher a second letter indicating that they had closed the investigation due to Mr. Lusher's failure to provide additional information.

---

[1] As of the date of instant Complaint in Civil Action, Mr. Lusher is unable to locate the original, signed credit agreement.

14. Bank of America failed to respond to Mr. Lusher's notice regarding the billing error within thirty (30) days of receiving that notice.

15. Bank of America failed to provide Mr. Lusher with an explanation setting forth Bank of America's belief that the billing error alleged by Mr. Lusher is incorrect in whole or in part.

16. Bank of America failed to furnish copies of documentary evidence of Mr. Lusher's indebtedness regarding the disputed amount.

17. Bank of America responded to Mr. Lusher's notice regarding the billing error by cancelling a separate credit card account Mr. Lusher held with Bank of America, by reducing Mr. Lusher's available credit limit on the credit account affected by the fraudulent charge, and by inaccurately reporting Mr. Lusher's affected credit account as delinquent to the credit reporting agencies.

18. Bank of America has continued to claim late fees and interest on the amount fraudulently charged to Mr. Lusher's account.

19. Bank of America's actions have significantly damaged Mr. Lusher's FICO credit score, reducing Mr. Lusher's FICO score from 820 to 640 and preventing Mr. Lusher from obtaining a mortgage.

20. Mr. Lusher sent a letter to Bank of America offering to pay the fraudulent charge in exchange for correcting his credit report.

21. Mr. Lusher's letter stated that all further communication regarding this matter should be in writing and demanded that Bank of America cease efforts to contact Mr. Lusher by phone.

22. Bank of America has not responded to Mr. Lusher's letter and continues to harass Mr. Lusher with repeated automated phone calls, phone calls from Bank of America's agents and extensive voicemails.

23. Throughout the course of dealing, Bank of America made various misrepresentations to Mr. Lusher, including but not limited to, that Bank of America would take reasonable steps to prevent and investigate unauthorized transactions on Mr. Lusher's account; that Bank of America would provide information to Mr. Lusher regarding the outcome of a fraud investigation; that Bank of America would furnish accurate information to the credit reporting agencies regarding Mr. Lusher's account; and that Bank of America would not charge interest and late fees on a disputed transaction until the dispute was investigated/resolved.

24. As a result of Bank of America's conduct, Mr. Lusher has suffered actual harm, has suffered from restricted credit limits with Bank of America, and has suffered from a decreased FICO score, all of which have rendered Mr. Lusher unable to obtain a mortgage.

## COUNT I
### VIOLATIONS OF THE TRUTH IN LENDING ACT ("TILA") 15 U.S.C. § 1601, *et seq.* and its implementing regulation, REGULATION Z, 12 C.F.R. § 1026, *et seq.*

25. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

26. Mr. Lusher is a "person" as defined by § 1602(e) of the TILA.

27. Bank of American is a "creditor" as defined by § 1602(f) of the TILA.

28. The purpose of the Truth in Lending Act is, *inter alia*, "to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601.

29. Regulation Z was promulgated to implement TILA. 12 C.F.R. § 1026.1(a).

30. Regulation Z at § 1026.13 sets forth requirements for resolution of billing errors when a consumer provides written notice. In pertinent part, § 1026.13 requires:

> (c) *Time for resolution; general procedures.*
> (1) the creditor shall mail or deliver written acknowledgement to the consumer within 30 days of receiving a billing error notice, unless the creditor has complied with the appropriate resolution procedures of paragraphs (e) and (f) of this section, as applicable, within the 30-day period;
> …
> (d) *Rules pending resolution.* Until a billing error is resolved under paragraph (e) or (f) of this section, the following rules apply:
> (1) *Consumer's rights to withhold disputed amount; collection action prohibited.* The consumer need not pay (and the creditor may not try to collect) any portion of any required payment that the consumer believes is related to the disputed amount (including related finance or other charges). If the cardholder has enrolled in an automatic payment plan offered by the card issuer and has agreed to pay the credit card indebtedness by periodic deductions from the cardholder's deposit account, the card issuer shall not deduct any part of the disputed amount or related finance or other charges if a billing error notice is received any time up to 3 business days before the scheduled payment date.
> (2) *Adverse credit reports prohibited.* The creditor or its agent shall not (directly or indirectly) make or threaten to make an adverse report to any person about the consumer's credit standing, or report that an amount or account is delinquent, because the consumer failed to pay the disputed amount or related finance or other charges.
> (3) *Acceleration of debt and restriction of account prohibited.* A creditor shall not accelerate any part of the consumer's indebtedness or restrict or close a consumer's account solely because the consumer has exercised in good faith rights provided by this section. A creditor may be subject to the forfeiture penalty under 15 U.S.C. 1666(e) for failure to comply with any of the requirements of this section.
> …
> (f) *Procedures if different billing error or no billing error occurred.* If, after conducting a reasonable investigation, a creditor determines that no billing error occurred or that a different billing error occurred from that asserted, the creditor shall within the time limits in paragraph (c)(2) of this section:
> (1) Mail or deliver to the consumer an explanation that sets forth the reasons for the creditor's belief that the billing error alleged by the consumer is incorrect in whole or in part;
> (2) Furnish copies of documentary evidence of the consumer's indebtedness, if the consumer so requests;

31. Mr. Lusher provided Bank of America with written notice of a billing error pursuant to 12 C.F.R. § 1026.13(b).

32. Bank of America failed to 'deliver written acknowledgement' to Mr. Lusher's billing error notice, in violation of 12 C.F.R. § 1026.13(c).

33. Upon information and belief, Bank of America failed to reasonably investigate the billing error reported by Mr. Lusher in violation of 12 C.F.R. § 1026.13(f).

34. Mr. Lusher refused to pay the fraudulent charge pursuant to 12 C.F.R. § 1026.13(d)(1).

35. As a result of Mr. Lusher withholding the disputed amount, Bank of America furnished adverse information about Mr. Lusher's credit standing to the credit reporting agencies in violation of 12 C.F.R. § 1026.13(d)(2).

36. Bank of America accelerated Mr. Lusher's indebtedness by charging interest and late fees on the fraudulent amount in violation of 12 C.F.R. § 1026.13(d)(3).

37. Bank of America restricted Mr. Lusher's account by reducing his credit limit in violation of 12 C.F.R. § 1026.13(d)(3).

38. Bank of America closed a separate credit account held by Mr. Lusher in response to his refusal to pay the disputed amount in violation of 12 C.F.R. § 1026.13(d)(3).

39. A private cause of action exists for violation of Regulation Z pursuant to TILA, which provides:

> Except as otherwise provided in this section, any creditor who fails to comply with **any requirement imposed under this part**, including ... subsection (f) or (g) of section 1641 of this title ... with respect to any person is liable to such person in an amount equal to the sum of—
> (1) **any actual damage** sustained by such person as a result of the failure;
> (2)(A) ... (iii) in the case of an individual action relating to an open end consumer credit plan that is not secured by real property or a dwelling,

> *twice the amount of any finance charge in connection with the transaction, with a minimum of $500 and a maximum of $5,000*, or such higher amount as may be appropriate in the case of an established pattern or practice of such failures;
> ...
> (3) in the case of any successful action to enforce the foregoing liability ... the *costs of the action, together with a reasonable attorney's fee* as determined by the court ...

15 U.S.C. § 1640(a)(emphasis added).

40. Further, § 1640(a) creates a private right of action for "any" violation of its provisions, which includes violation of Regulation Z, promulgated pursuant to TILA's § 1639(l)(2)(A).

41. As a result of Bank of America's conduct, Mr. Lusher's has suffered actual harm, has suffered from restricted credit limits with Bank of America, and has suffered from a decreased FICO score, all of which have rendered Mr. Lusher unable to obtain a mortgage.

## COUNT II
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT ("FCRA")
### 15 U.S.C. § 1681, *et seq.*

42. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

43. Mr. Lusher is a "consumer" as defined by § 1681(c) of the FCRA.

44. Bank of America is a "person" as defined by § 1681(b) of the FCRA.

45. Section 1681s-2(b)(1) of the FCRA provides:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall: (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; (D) if the investigation finds that the information is

> incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--(i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information.

15 U.S.C.A. § 1681s-2(b)1.

46. Following the unauthorized transaction, Mr. Lusher sent multiple Notice of Dispute letters to Bank of America regarding the trade line associated with the credit account.

47. Thereafter, Bank of America willfully caused false and inaccurate information about the trade line associated with Mr. Lusher's account to be furnished to credit reporting agencies when Bank of America failed to indicate the transaction as disputed and failed to investigate/prevent the unauthorized transaction.

48. Bank of America owed Mr. Lusher a duty to investigate, modify and/or delete the false and inaccurate information associated with the account trade line and failure to do so violated § 1681s-2(b)(1) of the FCRA. This failure comes after a notification of its duty to do so under §1681s-2(b)(1)(E)(ii).

49. Bank of America's conduct in furnishing inaccurate information to credit reporting agencies has negatively impacted Mr. Lusher's creditworthiness, lowered his credit score, and rendered him unable to obtain a mortgage.

50. Section 1681n(a) of the FCRA provides:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or (B) in the case of liability of a

natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater; (2) such amount of punitive damages as the court may allow; and (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C.A. § 1681n(a).

51. As a direct and proximate result of Bank of America's violations of § 1681s-2(b)(1)(E) of the FCRA, Mr. Lusher has suffered actual harm, annoyance, anxiety, embarrassment, emotional distress, and severe inconvenience.

### COUNT III
### VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW ("UTPCPL")
### 73 P.S. § 201-1, *et seq.*

52. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

53. Mr. Lusher and Bank of America are "persons" as defined by 73 P.S. § 201-2(2) of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL").

54. Bank of America's conduct as described herein constitutes "trade" and "commerce" as defined by 73 P.S. § 201-2(3).

55. Mr. Lusher utilized Bank of America's services "primarily for personal, family or household purposes." 73 P.S. §201-9.2(a).

56. The UTPCPL protects consumers from "unfair methods of competition and unfair or deceptive acts or practices" explicitly delineated in 73 P.S. § 201-2(4)(i)-(xxi).

57. Bank of America's conduct constituted unfair, deceptive or fraudulent actions declared as unlawful by the UTPCPL including, but not limited to the following:

9

    i.    Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services, 73 P.S. §201-2(4)(ii);

    ii.    Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another, 73 P.S. §201-2(4)(iii)

    iii.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have, 73 P.S. § 201-2(4)(v);

    iv.    Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another, 73 P.S. § 201-2(4)(vii);

    v.    Advertising goods or services with the intent not to sell them as advertised, 73 P.S. § 201-2(4)(ix);

    vi.    Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.73 P.S. § 201-2(4)(xxi).

58. Section 201-9.2(a) of the UTPCPL creates a private right of action for consumers which states, in pertinent part:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 31 of this act, may bring a private action to recover actual damages or one hundred dollars ($100.00), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100.00), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

59. Recoverable damages under the UTPCPL include compensation for pecuniary damages consequential damages, cover damages, and inconvenience of suit. Such actual damages may be assessed and trebled at the discretion of the court, in addition to such other relief as deemed just and proper.

10

60. Throughout the course of dealing, Bank of America made various misrepresentations to Mr. Lusher, including but not limited to, that Bank of America would take reasonable steps to prevent and investigate unauthorized transactions on Mr. Lusher's account; that Bank of America would provide information to Mr. Lusher regarding the outcome of a fraud investigation; that Bank of America would furnish accurate information to the credit reporting agencies regarding Mr. Lusher's account; and that Bank of America would not charge interest and late fees on a disputed transaction until the dispute was resolved.

61. Bank of America's deceptive representations are material in that a reasonable consumer would attach importance to the outcome of a fraud investigation and accuracy of an alleged debt.

62. Mr. Lusher justifiably relied on Bank of America's misrepresentations as Bank of America presents as an expert in the financial industry.

63. Bank of America failed to properly investigate the fraudulent charge, failed to provide information to Mr. Lusher regarding the outcome of the investigation, falsely reported that Mr. Lusher owed a disputed debt, charged interest and late fees on the disputed amount, closed Mr. Lusher's separate credit account with Bank of America, lowered his credit on the account at issue and furnished false and inaccurate information to the credit report agencies, all of which caused Mr. Lusher to suffer financial harm.

64. Bank of America's actions were willful, wanton, oppressive, outrageous, and intentional. Therefore, the imposition of treble damages is appropriate in this case.

**COUNT IV**
**VIOLATION OF PENNSYLVANIA FAIR CREDIT**
**EXTENSION UNIFORMITY ACT ("PFCEUA") and UTPCPL**
**73 P.S. § 2270.1, *et seq.***

65. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

66. Mr. Lusher is a "consumer" as defined by 73 P.S. § 2270.3 of the PFCEUA.

67. Defendant Bank of America is a "creditor" as defined by 73 P.S. § 2270.3 of the PFCEUA.

68. The PFCEUA was enacted to preclude "unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts." 73 P.S. § 2270.2

69. The PFCEUA provides, in relevant part:

> A creditor may not use any false, deceptive or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this paragraph:
> …
> (viii) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a debt is disputed.
>
> (x) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
> …
> A creditor may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this paragraph:
> …
> (i) The collection of any amount, including any interest, fee, charge or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

73 P.S. § 2270.4(b)(5)-(6).

70. Bank of America's conduct in furnishing inaccurate and false information to the credit reporting agencies following multiple Notice of Dispute letters from Mr. Lusher constitutes a violation of the PFCEUA § 2270.4(b)(5)(viii).

71. Bank of America's conduct in charging late fees and interest on the $5,000 transaction disputed by Mr. Lusher constitutes a violation of the PFCEUA § 2270.4(b)(5)(x) and § 2270.4(b)(6)(i).

72. Further, the PFCEUA § 2270.4(b)(4)(v) prohibits conduct which causes "a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person at the called number."

73. Bank of America violated § 2270.4(b)(4)(v) when it repeatedly communicated with Mr. Lusher via phone in an attempt to collect the alleged debt despite Mr. Lusher's written request that future correspondence be in writing.

74. Bank of America's deceptive representations are material in that a reasonable consumer would attach importance to the accuracy and legitimacy of communications with their creditor.

75. Mr. Lusher justifiably relied on Bank of America's misrepresentations as Bank of America presents as an expert in the financial industry.

76. As a result of Bank of America's false, deceptive, misleading and fraudulent representations, Mr. Lusher has been financially damaged.

77. Defendant Bank of America's actions were willful, wanton, oppressive, outrageous, and intentional. Therefore, the imposition of treble damages is appropriate in this case.

## COUNT V
## BREACH OF CONTRACT

78. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

79. Mr. Lusher entered into a credit card agreement with Bank of America.

13

80. Bank of America offered fraud prevention/investigation services when an unauthorized transaction is reported on the account.

81. Mr. Lusher reported an unauthorized transaction of $5,000.

82. Bank of America failed to investigate the reported fraud, failed to provide documentation of the fraud investigation and failed to stop the unauthorized transaction.

83. Further, Bank of America breached its duty of good faith and fair dealing when it assessed late fees and interest on the disputed amount.

89. The same constitutes a material breach of contract.

90. Mr. Lusher was deprived of the substantial benefit of his bargain as a result of Bank of America's material breach of the parties' agreement.

91. All conditions precedent to recovery have occurred.

92. Mr. Lusher has suffered and will continue to suffer damages as the result of Bank of America's breach.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Chase Lusher requests this Honorable Court enter judgment in Plaintiff's favor and against Defendant, Bank of America, N.A., as follows:

A. Ordering Defendant to pay actual, consequential, statutory, treble and/or punitive damages to Plaintiff in an amount in excess of arbitration limits;

B. Ordering Defendant to pay attorney's fees and litigation costs to Plaintiff;

C. Ordering Defendant to pay both pre-and post-judgment interest on any amounts awarded; and

D. Ordering such other and further relief as may be just and proper.

**JURY TRIAL DEMANDED**

                                        Respectfully submitted,

                                        **J.P. WARD AND ASSOCIATES, LLC**

Date: June 13, 2023                    By: <u>*/s/ Justin M. Bahorich*</u>
                                                Joshua P. Ward (Pa. I.D. No. 320347)
                                                Justin M. Bahorich (Pa. I.D. No. 329207)

                                                J.P. Ward and Associates, LLC
                                                The Rubicon Building
                                                201 South Highland Avenue
                                                Suite 201
                                                Pittsburgh, PA 15206

                                                *Counsel for Plaintiff*